## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LUKE PITZULO,

                  Plaintiff,

   v.

M&R POWER EQUIPMENT GROUP
BUTLER, INC.,

                  Defendant.

Civil Action No.   2-19-cv-100

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Luke Pitzulo, by and through his attorneys, Stember Cohn & Davidson-Welling, LLC, brings this Complaint against Defendant M&R Power Equipment Group, Inc. and alleges as follows:

### I. INTRODUCTION

1.      In this lawsuit, Plaintiff seeks to recover unpaid wages, unpaid overtime, liquidated damages, and penalties under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Pennsylvania law.

### II. THE PARTIES

2.      Plaintiff Luke Pitzulo is an adult individual who resides in Mahoning County, Ohio.

3.      Defendant M&R Power Equipment Group Butler, Inc. ("Defendant" or "M&R Power") is a Pennsylvania corporation headquartered in Butler County, with a business address of 620 Evans City Road, Butler PA 16001.

4.      At all relevant times, M&R Power was Plaintiff's "employer" within the meaning of the FLSA and applicable Pennsylvania laws.

5.      At all relevant times, M&R Power has been engaged in "commerce" as that term is defined in the FLSA. 29 U.S.C. § 203.

6.      M&R Power has had gross annual operating revenues in excess of $500,000.00.

7.      M&R Power is, and has at all relevant times been, an employer covered by the record-keeping, minimum wage, wage payment, and overtime mandates of the FLSA and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333 *et seq*.

### III.  JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1392, as the acts that give rise to these claims occurred in this District, and Defendant employed Plaintiff in, and regularly transact business in, this District.

### IV.  FACTS

10.      M&R Power sells and rents various construction-related "power equipment" in the Western Pennsylvania region and surrounding areas.

11.      From December 14, 2016 to September 13, 2017, M&R Power employed Plaintiff Luke Pitzulo.

12.      Initially, Pitzulo was hired as an "Outside Construction Equipment Sales Representative." In that role, he was to receive a base salary of $15,000 for the first six months, and a $20,000 base salary thereafter, plus commissions.

13.      However, Pitzulo's actual job duties involved very little "sales" activities.

2

14. Instead, Pitzulo was primarily tasked with transporting the Company's equipment to or from customers, and occasionally traveling to the customers' sites for repair work.

15. Pitzulo was immediately concerned, because his work precluded him from engaging in any sales activities, meaning his "base salary" comprised the vast majority of his compensation. Nevertheless, Pitzulo did the work assigned to him.

16. The Company assigned a heavy workload to Pitzulo. Indeed, for the first several weeks with the Company, Pitzulo worked approximately 70 hours per week.

17. In early January 2017, Pitzulo approached the Company's management, including Rod Perilli and Vice President Drew Munera, to discuss his role and compensation.

18. Specifically, because of the extremely long hours he was working, he asked Rod Perilli whether he should be receiving overtime.

19. In response, Rod Perilli expressed some sympathy with Pitzulo's situation and suggested the Company give him a one-time payment of $150. Drew Munera interjected, saying the Company would offer Pitzulo a $200 "bonus."

20. In response, Pitzulo explained that their proposed one-time payment was unsatisfactory, and that it would amount to less than a dollar per hour.

21. Munera and Rod Perilli then assured Pitzulo that there would be more sales activity soon. However, both made it clear that Pitzulo would not earn any overtime, no matter how many hours he worked.

22. Relying on their representations, Pitzulo continued working for the Company. However, the situation did not change as promised.

23. From January to April 2017, Pitzulo continued to work between 50 and 60 hours per week (depending on whether he worked Saturday).

24.     Pitzulo continued spending the majority of his time delivering and retrieving equipment from customers, with minimal sales activities or opportunities to earn commissions. As a result, Pitzulo's compensation continued to fall far short of what he was led to expect when he was hired.

25.     In March 2017, Pitzulo again approached the Company's management team, asking for a meeting to discuss his compensation. Specifically, Pitzulo met with Drew Munera, John Mahinis (former President), Rod Perilli, and Dustin Perilli.

26.     At the meeting, Pitzulo explained to Munera that his work involved barely any sales, and that he was not being compensated for all of the hours he was working. Munera acknowledged Pitzulo's heavy workload and promised to "try to reduce [Pitzulo's] hours and make sure the situation is not being abused."

27.     Pitzulo said he believed he was entitled to "back pay" for all the uncompensated overtime hours he had worked. Munera laughed at Pitzulo, saying "You won't get a dime of back pay. We don't look backwards, just forwards."

28.     When Pitzulo explained that he believed he was entitled by law to overtime, Munera replied by saying, "Basically, just shut the fuck up and do your job."

29.     In April 2017, Pitzulo met with then-President John Mahinis. Mahinis told Pitzulo that the Company was going to revise his role. Instead of "Outside Sales Representative," Pitzulo would be placed into a new position known as "Product Support Specialist / Fleet Manager." In this new role, Pitzulo's base salary would increase to $50,000. However, he would no longer be a sales representative, and he would be ineligible for sales commissions.

30.     However, while Pitzulo's title and compensation had changed, his job duties remained largely the same.

4

31. From April 2017 until his termination, Pitzulo continued to travel to customer sites, transporting equipment or conducting repairs. He continued working 50-60 hours per week, and sometimes more, with no compensation beyond his base salary (i.e., no commissions and no overtime pay).

32. Throughout this time, Pitzulo would occasionally remind his managers that he believed he was entitled to overtime, and that it was not fair to work him so many hours without further compensation. Every time the subject was raised, Pitzulo was advised to drop it and to appreciate the compensation he received.

33. On or about September 7, 2017, Pitzulo again met first with John Mahinis about his compensation and work hours.

34. During their meeting, Pitzulo told Mahinis that he was unwilling to continue working for the Company without receiving compensation for his overtime hours. He explained that if the Company continued refusing to pay him the overtime compensation he was entitled to, he would resign and seek compensation in a lawsuit.

35. Pitzulo explained to Mahinis that the Company "classified me as exempt but I'm not." In response, Mahinis told Pitzulo that he was "exempt because [he is] the Fleet Manager."

36. Pitzulo, who had performed some legal research on his own, reminded Mahinis that under federal law "job titles don't dictate your classification," and that his job duties were not like those of a Fleet Manager. Mahinis responded that the Company would schedule a further meeting with Ralph Perilli to discuss it further.

37. On or about September 8, 2017, Pitzulo met with Scott Walker, John Mahinis, Rod Perilli, and Ralph Perilli. The meeting lasted approximately three minutes. When Pitzulo asserted that he was legally entitled to overtime pay, the managers laughed at and mocked him.

5

38.     Pitzulo attempted to keep the meeting professional, and asked the managers if they would ever discuss it seriously with him. In response, Ralph Perilli abruptly left the room. When Pitzulo tried to continue the meeting, Mahinis shouted, "This meeting is over!"

39.     On Monday, September 11, 2017, Pitzulo again met with Scott Walker, John Mahinis, Rod Perilli, and Ralph Perilli.

40.     Ralph Perilli began the meeting by deriding Pitzulo's complaint saying, "Let me get this straight. You're going to sue me, when I give you a job and a paycheck, because you don't think I'm treating you fairly."

41.     Pitzulo replied that he was not doing the sales job the Company hired him to do and, because he was not an "outside sales" representative or a real "manager," the Company was obligated to pay him overtime. In support of his position, Pitzulo presented his managers with a Department of Labor "Fact Sheet" that describes the outside sales exemption, and then explained how it did not apply to him.

42.     In response, Ralph Perilli said, "If I was to know every single law or conform to every single little detail, I'd never be able to have a business."

43.     Ralph Perilli then tried to scare Pitzulo away from asserting his rights saying, "You want to sue me? Then do it. Go pay an attorney. I'll bury you in legal fees and string you out for years."

44.     Ralph Perilli left the meeting briefly to speak with the Company's professional staff. Upon his return, he thanked Pitzulo for his time, shook his hand, and then issued a thinly veiled threat: "If this were the old days, I'd just eliminate the problem completely and make you disappear." Understandably, his comment terrified Pitzulo.

45.     On September 12, 2017, Pitzulo met with Ralph Perilli and the Company's Service Manager. Ralph Perilli stated that he had spoken with the finance and sales management team and

concluded that Pitzulo would receive no additional pay. However, as a compromise, Ralph Perilli said the Company "would try to keep [Pitzulo's] hours closer to 40 per week." Nevertheless, he said Pitzulo would still sometimes have to work more hours without any overtime pay, because "We all have to make sacrifices for this company."

46.     In response, Pitzulo explained that the Company's management had previously promised to limit his hours, but it did not actually happen.

47.     Having no reason to believe the Company would change its practices regarding his hours and overtime pay—especially after threats of "burying" him in legal fees or making him "disappear" if he tried to challenge them—Pitzulo decided he could not tolerate the position any longer.

48.     Accordingly, on September 13, 2017, Pitzulo returned all Company-owned property in his possession and advised the store manager that he was resigning.

## COUNT I
### (Violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)
### (Overtime)

49.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

50.     At all relevant times, Plaintiff has been entitled to the rights, protections, and benefits of the FLSA, 29 U.S.C. §§ 201 *et seq.*

51.     As an enterprise engaged in interstate commerce with employees engaged in commerce, Defendant is subject to the FLSA's overtime requirements.

52.     Under the FLSA, Defendant was required to pay Plaintiff an overtime premium of "not less than one and one-half times" his regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

53.     Throughout his employment with Defendant, Plaintiff regularly worked over 40 hours in a week.

54.     Defendant violated the FLSA by willfully failing to pay Plaintiff a lawful overtime premium for all hours worked over 40 in a week.

55.     Plaintiff, therefore, is entitled to damages equal to 1.5 times his regular rate of pay for all hours worked over 40 in a week.

56.     Further, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime, as described in FLSA Section 16(b), 29 U.S.C. § 216(b).


**COUNT II**
**(Violation of Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333 *et seq*.)**
**(Overtime)**

57.     Plaintiff incorporates all allegations in the preceding paragraphs.

58.     At all relevant times, Plaintiff was entitled to the rights, protections and benefits of the PMWA, 43 P.S. § 333 *et seq*.

59.     The PMWA provides that, for all hours worked over 40 in a week, employees "shall be paid overtime not less than one and one-half times the employe's regular rate." 43 P.S. § 333.104(c).

60.     Throughout his employment with Defendant, Plaintiff regularly worked over 40 hours in a week.

61.     Defendant violated the PMWA by failing to pay a lawful overtime premium to Plaintiff for hours worked in excess of 40 hours per week.

62.     By failing to pay overtime to Plaintiff, Defendant is liable under the PMWA, for overtime, costs, reasonable attorneys' fees, and interest. 43 P.S. § 333.113.

## COUNT III
### (Violation of Wage Payment and Collection Act, 43 P.S. § 260.1 *et seq.*)

63.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

64.     Defendant willfully failed to pay Plaintiff lawful overtime for more than 30 days after his regularly scheduled paydays.

65.     As a result, Plaintiff is entitled to liquidated damages in the amount of 25% of wages and benefits due, or $500, whichever is greater, in addition to any unpaid wages and benefits. 43 P.S. § 260.10.

66.     Pursuant to 43 P.S. §260.9a, Plaintiff is also entitled to costs and reasonable attorneys' fees incurred in bringing this claim.

## COUNT IV
### (Retaliatory Constructive Discharge in Violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)

67.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

68.     At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

69.     The FLSA prohibits employers such as Defendant from retaliating against an employee for opposing practices made unlawful under the Act.  29 U.S.C. § 215(a)(3).

70.     As explained above, by making false promises to Plaintiff, mocking Plaintiff's protected complaints about overtime, and threatening to "bury" Plaintiff in legal fees (or worse), Defendant constructively terminated Plaintiff's employment.

71.     In retaliating against Plaintiff for his protected complaints, Defendant willfully violated the FLSA, 29 U.S.C. § 2l5(a)(3).

72. As a result of Defendant's willful acts, Plaintiff has been deprived of wages and benefits since the date of his termination, and suffered humiliation, embarrassment and other emotional distress.

73. Accordingly, Plaintiff is entitled to recovery of his lost wages, compensatory damages for emotional distress, liquidated damages, punitive damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. On Count I (FLSA):

    (i) Declare that Defendant violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff; that Defendant's violations were willful; that Defendant failed to keep accurate records of time worked; that Plaintiff is entitled to be paid a lawful overtime premium for work in excess of 40 hours per week; that the amounts of unpaid overtime to which Plaintiff is entitled are to be doubled as liquidated damages and awarded to him;

    (ii) Award Plaintiff damages in the amount of unpaid overtime compensation to be proven at trial;

    (iii) Award Plaintiff liquidated damages in an amount equal to the unpaid overtime compensation;

    (iv) Award reasonable attorneys' fees and costs;

B. On Count II (PMWA):

    (i) Declare that Defendant violated the PMWA;

    (ii) Award damages to Plaintiff in the amount of unpaid overtime compensation according to proof at trial;

    (iii) Award Plaintiff pre-judgment interest at the highest rate, from and after the date of service of the initial complaint in this action, on all unpaid overtime wages from the date such wages were earned and due;

    (iv) Award reasonable attorneys' fees and costs;

C.      On Count III (Violation of WPCL):

    (i)      Declare that Defendant violated the WPCL by failing to pay lawful overtime to Plaintiff; that Defendant acted without good faith or reasonable grounds; and that Plaintiff is entitled to liquidated damages;

    (ii)     Award damages to Plaintiff in the amount of unpaid regular wages and overtime due;

    (iii)    Award liquidated damages to Plaintiff in an amount equal to 25% of unpaid regular and overtime wages, or $500, whichever is greater;

    (iv)     Award reasonable attorneys' fees and costs;

D.      Count IV (Retaliation):

    (i)      Declare that Defendant violated the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); that Defendant's violations were willful; that Plaintiff is entitled to judgment on his retaliation claim, and to back pay, front pay, compensatory damages, punitive damages, and liquidated damages;

    (ii)     Award Plaintiff backpay, including all lost wages, benefits, bonuses, and other emoluments of employment, and front pay for a reasonable period;

    (iii)    Award Plaintiff compensatory damages for emotional distress, pain, humiliation, and embarrassment caused by Defendant's wrongful acts;

    (iv)     Award Plaintiff punitive damages;

    (iii)    Award Plaintiff liquidated damages or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

    (iv)     Award reasonable attorneys' fees and costs;

E.      Attorneys' fees and costs of the action;

F.      Pre- and post-judgment interest; and

G.      Such other relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and/or issues so triable.

11

Respectfully submitted,

Dated: January 29 2019

/s/Vincent J. Mersich

Vincent J. Mersich, Esquire
PA ID No. 310971
vmersich@stembercohn.com
**STEMBER COHN &**
      **DAVIDSON- WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.:  (412) 338-1446

*Attorneys for Plaintiff*